UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

RAYMOND C. KNOX, JR. and KATHERINE,    :
C. BARRAMEN,    :
   :
         Plaintiffs,    :
   :    **OPINION AND ORDER**
   - against -    :
   :    10 Civ. 1671 (ER)
COUNTY OF PUTNAM, PUTNAM  COUNTY    :
SHERIFF'S DEPARTMENT, TIMOTHY R.    :
GANNON, CATHERINE BRUMLEY,    :
ANDREW D. CLAVY, PATRICK J.    :
O'CONNELL , RONALD SCHIAVONE and    :
CATHY BOOKLESS,    :
   :
         Defendants.    :

———————————————————————x

Ramos, D.J.:

       Defendants Putnam County and Timothy R. Gannon ("Defendants") bring this Motion

for Summary Judgment seeking dismissal of Plaintiff's complaint in its entirety pursuant to Fed.

R. Civ. P. 56.  Doc. 43.  For the reasons set forth below, Defendants' Motion is GRANTED in

part and DENIED in part.

**I. Background**

     **A.  Procedural History**

       Plaintiff Raymond C. Knox and his wife Katherine C. Barramen commenced this action

against Putnam County (the "County"), the Putnam County Sheriff's Department ("PCSD"),

Timothy R. Gannon, Catherine Brumley, Andrew D. Clavy, Patrick J. O'Connell, Ronald

Schiavone and Cathy Bookless on March 2, 2010, alleging state and federal claims for malicious

prosecution, a federal claim for deprivation of a right to a fair trial, and a derivative claim for

loss of services and consortium on behalf of Barramen.[1]  Doc. 1 ("Compl.").  On March 31,

2010, pursuant to a stipulated order executed by the parties and entered by the Honorable Cathy

Seibel, to whom this case was previously assigned, Plaintiff discontinued his action against the

PCSD, and discontinued his federal § 1983 malicious prosecution and fair trial claims against the

County.  Doc. 12.  Plaintiff did not discontinue his state law malicious prosecution claim against

the County.  *Id.*  On June 16, 2010, Plaintiff sought partial default judgment against Defendants

Catherine Brumley, Andrew D. Clavy, Patrick J. O'Connell, Ronald Schiavone and Cathy

Bookless (the "non-County Defendants").  After a show cause hearing on July 23, 2010, Judge

Seibel entered partial default judgment against all of the non-County Defendants except for

Bookless who appeared at the show cause hearing.[2]  Doc. 26.

      This case was reassigned to the undersigned on January 5, 2012.  Doc. 41.  Pursuant to a

briefing schedule set by Judge Seibel, Defendants filed their Motion for Summary Judgment on

January 17, 2012; Plaintiff filed his opposition papers on March 2, 2012; Defendants filed their

---

[1] Plaintiff Raymond C. Knox brings the first three claims in the Complaint in his name.  Co-Plaintiff Barramen brings only a derivative claim for loss of services and consortium.  Accordingly, for purposes of clarity, the Court refers to a singular Plaintiff, Raymond C. Knox, unless otherwise noted.

[2] Notwithstanding Plaintiff's representations to the contrary, Bookless has never properly filed an answer in this case.  *See* Pls.' Mem. Law Opp. Defs.' Mot. Summ. Judg. ("Pls.' Mem.") 14.  The docket sheet indicates that Bookless attempted to file an answer improperly by faxing it to the Chambers of Judge Seibel on July 10, 2010, and that, on July 12, 2010, Judge Seibel directed Bookless to contact the Court's Pro Se Office about properly serving and filing her answer.  Doc. 25.  Although Bookless filed a Notice of Appearance on August 11, 2010, Doc. 27, she never filed an answer.

      Plaintiff also indicates that this case has been "automatically stay[ed]" against Bookless because she filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York under docket number 11-35680-cgm.  Pls.' Mem. 14.  This Court was never notified about the bankruptcy filing; however, a search of the information available on the Official Court Electronic Document Filing System ("ECF") for the U.S. Bankruptcy Court for the Southern District of New York indicates that Bookless was granted a discharge on June 23, 2011 and that her bankruptcy case was terminated on October 18, 2011.  *See In re Fagan*, No. 11-35680-cgm, Docs. 13, 15. The information available on ECF also revealed that Plaintiff—who filed an adversary proceeding against Bookless in the U.S. Bankruptcy Court for the Southern District of New York—received contemporaneous notices relating to Bookless' bankruptcy case and his associated case.  *See Knox v. Fagan* (*In re Fagan*), 11-09043-cgm, Doc. 1.

Reply on March 22, 2012; and, with leave of this Court, Plaintiff filed a Sur-Reply on March 27, 2012.

### B. Relevant Facts

The following facts are undisputed except where otherwise noted.[3]

In February 2007, Plaintiff was the owner and manager of a bar/restaurant known as "The Paddock" located on Route 22 in the Town of Patterson and County of Putnam, New York. Defs.' 56.1 Stmt. ¶¶ 11-12.[4]  Sandra Longchamps, who is not a party to this action, was employed as a part-time bartender at The Paddock in and prior to February 2007.  *Id.* ¶ 11. Catherine Brumley and Mary Ann Arvisais were also employed as part-time bartenders at The

---

[3] In opposing a motion for summary judgment pursuant to Fed. R. Civ. P. 56, litigants in this District are required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support its position by citing to admissible evidence in the record.  *See* Local Rule 56.1(b), (d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  These rules—simple to understand and apply—are designed to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  Unfortunately, Plaintiff's counsel in this case failed to comply with the straightforward requirements of Local Rule 56.1 and Fed. R. Civ. P. 56.  For example, in responding to every statement of fact offered by Defendants that is supported by a citation to Gannon's deposition testimony that Plaintiff purports to deny, Plaintiff asserts that the fact is disputed because "the trier of fact is entitled to conclude, based on the maxim of *falsus in uno, falsus in omnibus*, that Gannon is not worthy of belief and that all of Gannon's claims can therefore be rejected . . . ."  *See, e.g.*, Plaintiffs' Response to Defendants' Rule 56.1 Statement ("Pls.' 56.1 Stmt.") ¶ 9, at 2, Doc. 49; *see also id.* ¶¶ 10, 18-21, 25, 28, 30, at 3-6 (same).

Plaintiffs' 56.1 Statement contains similarly inappropriate responses to Defendants' statements of fact relating to the witness statements gathered in the underlying criminal investigation.  *E.g., id.* ¶¶ 32-40, at 7-10.  These responses dismiss the statements as false in a conclusory fashion and are improper because they fail to specifically controvert the facts offered by Defendants.  *See, e.g., id.*; *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff failed to specifically dispute defendant's statements or responded with conclusory assertions or legal arguments).  In other responses, Plaintiff cites to evidence in the record that does not support his assertions or that purport to refute the facts offered by Defendants.  *E.g.*, Pls.' 56.1 Stmt. ¶¶ 22-23, 29, 31, at 5-6; *Holtz*, 258 F.3d at 74 (explaining that where, as here, there are no citations to admissible evidence, or the cited materials do not support the assertions in a party's Rule 56.1 statement, those assertions must be disregarded).  Accordingly, pursuant to Local Rule 56.1(c), the facts set forth in Defendants' Rule 56.1 Statement that are supported by citations to admissible evidence will be deemed admitted for purposes of this motion unless they have been properly disputed by Plaintiff in his submissions.

[4] Citations to "Defs.' 56.1 Stmt." refer to Defendant County of Putnam, Putnam County Sheriff's Department and Timothy R. Gannon's Rule 56.1 Statement ("Defendants' Rule 56.1 Statement"), Doc. 46.

Paddock.  Pls.' 56.1 Stmt. ¶ 3, at 15.[5]  On February 4, 2007, which was Super Bowl Sunday,
Brumley was the bartender for the 12:00 pm to 5:00 pm shift at The Paddock, and Arvisais was
the bartender for the night shift, which began immediately thereafter.  *Id.*  Longchamps was not
scheduled to work that day, *id.*; however, it is undisputed that she was at The Paddock at various
times throughout the day.  Defs.' 56.1 Stmt. ¶ 13.  Plaintiff saw Longchamps in The Paddock at
least three times on that day:  first, at approximately 12:00 or 12:30 pm; a second time, at
approximately 3:00 or 3:30 pm; and finally, at approximately 7:45 pm, when Longchamps
arrived to order dinner for her children.[6]  Defs.' 56.1 Stmt. ¶ 14; Sivin Decl. Ex. 7 ("Knox. Tr.")
81, 83-84, 88, 94.[7]

At approximately 9:37 pm on February 4, 2007, Longchamps was driving south on Route
22 when she crossed over the double yellow line and crashed head-on into a van in the
northbound lane, killing herself and the driver of the van (the "Accident").  Defs.' 56.1 Stmt. ¶ 1.
Gannon, who is a certified Accident Reconstructionist and a Sergeant in the PCSD, was on his
way to work when he was directed to respond to the location of the Accident.  *Id.* ¶ 3.  Gannon
arrived at the scene at approximately 10:40 pm.  *Id.* ¶ 4.  Other members of the PCSD were

---

[5] Because Plaintiffs' 56.1 Statement contains both a response to each paragraph in Defendants' 56.1 Statement and a
separately enumerated statement of additional facts as to which it is contended that there exists a genuine issue to be
tried, statements in Plaintiffs' 56.1 Statement are identified in citations by both page and paragraph number.

[6] The amount of time Longchamps spent at The Paddock on the night of February 4, 2007 is disputed.  At his
deposition, Plaintiff testified that Longchamps left the Paddock at approximately 8:20 pm.  Knox Tr. 94:5-6.  The
sworn witness statement relied on by Defendants states that Longchamps was at The Paddock from approximately
8:00 pm until 9:30 pm.  Declaration of James A. Randazzo ("Randazzo Decl."), Ex. L, Doc. 44.

[7] Citations to "Sivin Decl." refer to the Declaration of Edward Sivin and the exhibits attached thereto, which were
filed in opposition to Defendants' motion for summary judgment.  Doc. 48.

already at the scene when Gannon arrived.  *Id.* ¶ 2.  Captain Thomas Lindert of the PCSD

assigned Gannon to handle the investigation of the Accident on February 6, 2007. [8]  *Id.* ¶ 17.

Over the course of the next five weeks, Gannon interviewed various witnesses to that

day's events, including each of the witnesses who provided sworn statements, and who testified

for the prosecution at the trial of the Plaintiff.  *See* Randazzo Decl. Exs. L-P, R-T; Compl. ¶¶ 37-

43, 52-57.  On February 23, 2007, Gannon received a toxicology report indicating that

Longchamps had a blood alcohol concentration of .345 at the time of her death.  Defs.' 56.1

Stmt. ¶ 52.[9]  The same report revealed that Longchamps had cocaine in her system.  *Id.* ¶ 53.

On March 30, 2007, Gannon executed three sworn accusatory instruments charging

Plaintiff with selling alcohol to a visibly intoxicated person, in violation of New York Alcoholic

Beverage Control ("ABC") Law § 65(2); permitting gambling on a licensed premises in violation

of ABC Law § 106(6);[10] and serving alcohol to a habitual drunkard in violation of ABC Law §

65(3).  Defs.' 56.1 Stmt. ¶ 54; Pls.' 56.1 Stmt. ¶ 39, at 22.  Gannon issued a desk appearance

ticket for the charges and served it on Plaintiff on April 4, 2007.  Randazzo Decl. Ex. V.

---

[8] The circumstances surrounding the investigation of the Accident are strongly contested.  Because the Court is denying Defendants' motion for summary judgment, it has not discussed every contested factual issue in ruling on Defendants' motion.

[9] Plaintiff purports to dispute this statement of fact offered by Defendants by responding:  "Plaintiffs admit only that Gannon claims to have received the document annexed as Exhibit U to the Randazzo Declaration, but deny that defendants have laid a sufficient foundation for the purported findings contained in that exhibit to be deemed admissible."  Pls.' 56.1 Stmt. ¶ 52, at 13.  This is not a proper response under Local Rule 56.1(c), *see supra* note 3, and Plaintiff's basis for objecting to the use of the toxicology report is unclear, especially since Plaintiff does not take issue with Defendants' reliance on the same toxicology report as evidence of the fact that there was cocaine in Longchamps' system at the time of her death.  Pls.' 56.1 Stmt. ¶ 53, at 13.  Moreover, there is no genuine dispute as to the fact that Longchamps was intoxicated at the time of the Accident; rather the central dispute relates to *where* Longchamps became inebriated prior to the accident.  *See, e.g.*, Pls.' Mem. 3 ("It was later determined that Longchamps had cocaine and alcohol in her system at the time of the accident."); *see also id.* at 10 (arguing that Gannon's memo book notes indicate that a witness who was not at The Paddock reported " having observed an intoxicated Sandra Longchamps before the accident").

[10] The gambling charge was based on a Super Bowl pool that Plaintiff allegedly ran with Longchamps at The Paddock from September 2007 through February 4, 2007.  Randazzo Decl. Exs. Q, W.

Beginning on December 12, 2007, Plaintiff was tried for the criminal violations in the Justice Court for the Town of Patterson before a local, non-attorney judge. Pls.' 56.1 Stmt. ¶ 40, at 22; Compl. ¶ 51.  On January 8, 2008, at the conclusion of the trial, Plaintiff was convicted on the charges of selling alcohol to a visibly intoxicated person and permitting gambling on a licensed premises.  He was acquitted of serving a habitual drunkard.[11]  Defs.' 56.1 Stmt. ¶ 55. On March 24, 2008, Plaintiff was sentenced to a nine-month term of incarceration.  Compl. ¶ 65. Plaintiff served five months, and was released from custody on October 17, 2008.  *Id.* ¶¶ 66-67. He thereafter served an additional eleven months of supervised parole.  *Id.* ¶ 68.  On August 19, 2009, Plaintiff's convictions were reversed by the Appellate Term of the Supreme Court of the State of New York, and the underlying accusatory instruments were dismissed.  *Id.* ¶¶ 69-70; Randazzo Decl. Ex. X.

## II. Legal Standard Governing Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment

---

[11] It is unfortunate that, despite the fact that he has alleged that he was deprived of a fair trial, Plaintiff has presented no evidence of what transpired at the trial, apart from the transcript of Gannon's testimony—which was only presented in the People's rebuttal case—and the unsupported allegations that Gannon lied under oath.  Further, it is at least curious that Defendants, in rebutting the allegations that they deprived Plaintiff of a fair trial, have likewise proffered *no* evidence of the People's proof at trial.  *See also infra* note 14 and Section IV.

is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)) (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  To defeat a motion for summary judgment, "the non-moving must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III. Malicious Prosecution

### A.  Legal Standard

A claim for malicious prosecution under § 1983 is "substantially the same" as a claim for malicious prosecution under New York law.  *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.

2003).  To prevail on a claim for malicious prosecution, a plaintiff must show that:  (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in his favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted with malice.  *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir. 2004).  When a plaintiff asserts a federal malicious prosecution claim under § 1983, he must also establish a Fourth Amendment violation.  *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009); *see also Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 116 (2d Cir. 1995) (explaining that plaintiff must show a post-arraignment "deprivation of liberty consistent with the concept of 'seizure.'").

**B.  Discussion**

The first two elements of Plaintiff's malicious prosecution claim are not disputed. Defendants contend that they are entitled to summary judgment because Plaintiff's conviction establishes probable cause,[12] and because there is no evidence of malice.[13]  Mem. Law Supp. Defs.' Mot. Summ. Judg. ("Defs.' Mem.") 14-18, Doc. 45.  "[A] presumption of probable cause is created by a criminal conviction; 'A conviction establishes the existence of probable cause which, even when the conviction is reversed on appeal, becomes a rebuttable presumption.'  This

---

[12] Defendants did not specifically point to evidence establishing probable cause for the charge on which Plaintiff was found not guilty.  *See* Defs.' 56.1 Stmt. ¶ 55.  Instead, after summarizing the evidence gathered by Gannon, Defendants argue that "[m]inimally, there was probable cause to charge [Plaintiff] with at least one of [the three] crimes," Defs.' Mem. 14, and claim that the evidence "was sufficient to establish probable cause for any one of the ABC violations with which [Plaintiff] was charged."  *Id.* at 16; *see also* Reply Mem. Law Further Supp. Defs.' Mot. Summ. Judg. ("Defs.' Reply Mem.") 6 ("the Plaintiff was convicted of two out of three charges brought against him, thereby raising the presumption of probable cause as a complete bar to the Plaintiff's malicious prosecution causes of action").  This is insufficient to defeat a claim for malicious prosecution.  "Defendants here must have had probable cause for *each* charge for which Plaintiff was prosecuted."  *Rodriguez v. N.Y. City Police Dep't*, No. 10 Civ. 891 (BSJ) (THK), 2011 WL 5057205, at *5 (S.D.N.Y. Oct. 24, 2011) (emphasis added).

[13] Defendants also argue that Gannon is entitled to qualified immunity, Defs.' Mem. 21-23, Defs.' Reply Mem. 10; however, where, as here, there is a triable question of fact as to whether Defendant knowingly misrepresented the evidence to prosecutors in relation to the issue of probable cause, the Court cannot make a determination as to qualified immunity on a motion for summary judgment.  *See, e.g.*, *Sankar v. City of New York*, No. 07 CV 4726 (RJD) (SMG), --- F. Supp. 2d. ----, 2012 WL 1116984, at *6 (E.D.N.Y. Mar. 30, 2012) (declining to afford defendants "the shield of qualified immunity" for false arrest claim where qualified immunity analysis was inextricably linked to questions of material fact as to the existence probable cause).

presumption can be rebutted only by a showing that the conviction itself was a result of fraud, perjury, or other unethical acts on the part of the defendant which affected the integrity of the prosecution." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (quoting *Sassower v. City of White Plains*, No. 89 Civ. 1267 (MJL), 1993 WL 378862, at *3 (S.D.N.Y. Sept. 24, 1993)) (internal citations omitted).

In seeking to rebut this presumption, Plaintiff makes a multitude of arguments regarding Gannon's credibility and the credibility of nearly every person who provided a sworn statement implicating Plaintiff in the underlying criminal investigation.  For the most part, these arguments are based on conclusory assertions, speculation, conjecture and surmise;[14] however, there is one argument in Plaintiff's submissions that is supported by admissible evidence in the record, which raises a triable question of fact regarding Gannon's credibility.

---

[14] It is for this reason that the Court has not, for example, considered Plaintiff's unsupported assertion that Gannon "withheld evidence from the prosecution which, if credited, likely would have resulted in charges not being filed against Knox in the first instance."  Pls.' Mem. 20 n.11.  This assertion is a reference to interview notes taken by Investigator Jeffrey Devolve of the PCSD.  *Id.* at 19-20.  Investigator Devolve's notes, taken on February 5, 2007, the day before Gannon was assigned to handle the investigation, summarize information he obtained from Arvisais, Brumley and a third employee of The Paddock who was working as a waitress on the night of the Accident.  Randazzo Decl. Ex. F.  Even if Plaintiff had offered admissible evidence to show that Gannon withheld this evidence from the prosecutor—which he has not—there is no evidence that he did so intentionally.  *Williams v. City of New York*, No. 02 Civ. 3693 (CBM), 2003 WL 22434151, at *8 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 F. App'x 388 (2d Cir. 2005).  Moreover, Plaintiff's contention that the document "if credited, likely would have resulted in charges not being filed against [Plaintiff]" is baseless, especially given the complete absence of evidence in the record regarding the underlying criminal proceedings.  *Blair v. City of New York*, No. 03 CV 1485 (SLT) (CLP), 2009 WL 959547, at *8 (E.D.N.Y. Mar. 31, 2009) ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred [during the relevant proceedings] and to further establish that those circumstances warrant a finding of misconduct sufficient to erode' the presumption of probable cause, because "[w]ithout proof of what happened . . . a plaintiff's contention that his [prosecution] was based on false testimony amounts to 'rank speculation.'") (internal citations omitted).

Although Plaintiff has disclaimed any allegations of a *Brady* violation relating to Devolve's notes, Pls.' Mem. 20 n.11, the Court also notes that the argument that Plaintiff could have used the notes to impeach Brumley at the criminal trial is completely meritless.  The notes taken by Investigator Devolve do not reflect *any* statements attributed to Brumley, nor is the information contained in the notes "inconsistent" with Brumley's other statements, because there is no evidence in the record to support Plaintiff's unstated assumption that Devolve asked questions about Longchamps' alcohol consumption on the night of the Accident.  In fact, although the Court has resolved all ambiguities in Plaintiff's favor in deciding this motion, what the notes do make clear is that Arvisais provided an inconsistent statement regarding Longchamps' whereabouts on the day of the Accident.

### C.  Sergeant Gannon's Credibility

In answering Defendants' motion, Plaintiff relies heavily on the deposition testimony of Arvisais who claims that Gannon attempted to coerce her on more than one occasion into providing him with a written statement implicating Plaintiff in the underlying criminal case.[15] Pls.' Mem. 6-7, 17; Sivin Decl. Ex. 8 ("Arvisais Tr.") 42:2-5.  For example, Arvisais testified that during the first conversation she had with Gannon:

> He told me that it was a felony.  Whoever served her, it was a felony matter and it was a real serious thing, and he thought that I was not taking it seriously at all.  He was calling me little girl, and stuff like that. . . .  He told me that I could be charged with a felony.  It was between me and [Plaintiff] getting charged with a felony.  Cathy [Brumley] was out.  She's a good girl.

Arvisais Tr. 56:20-57:6.  Arvisais stated that during one telephone conversation with Gannon, he said to her (in sum and substance):  "All you have to do is you just tell them that you did not— you know, it wasn't you.  [Plaintiff] served [Longchamps].  You did not serve her."  *Id.* at 34:22-25.  Arvisais testified that even after she told Gannon that neither she nor Plaintiff had served Longchamps, he said: "tell them—do you know what I mean—that it was [Plaintiff].  You won't get in any trouble if both [you and Brumley] agree that it was [Plaintiff]."  *Id.* at 34:24-35:3.  Arvisais also said she told Gannon that she would not write a statement saying that Plaintiff had served alcohol to Longchamps, "because it was a lie," *id.* at 43:8-10, and estimated that she told Gannon that she was not going to lie multiple times during every telephone conversation.  *Id.* at

---

[15] While Plaintiff also relies on the deposition testimony of Arvisais in an effort to support his oft-repeated claim that Gannon "knowingly coerced and induced Cathy Brumley to provide him with sworn statements falsely implicating Knox," *see, e.g.*, Pls.' 56.1 Stmt. ¶¶ 9, 32-33, 37-38, at 2, 7, 9, the Arvisais testimony in that regard is hearsay and thus is not entitled to any weight.  *Rivera v. United States*, 928 F.2d 592, 605 (2d Cir. 1991).  The Court also notes that this claim is contradicted by admissible evidence in the record, including the sworn deposition testimony of Brumley.  Randazzo Decl. Ex. K (Brumley Tr. 86:19-87:14, 95:18-23, 96:4-97:3, 102:13-103:16).  "Although in a ruling on a motion for summary judgment a court must assess the evidence in the light most favorable to the non-moving party, resolve all ambiguities, and draw all reasonable inferences in its favor . . . . [A] court will not entertain inadmissible hearsay unsubstantiated by any other evidence in ruling on a summary judgment motion."  *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 566 n.2 (S.D.N.Y. 2010) (internal citations and quotation marks omitted).

52:5-7.  According to Arvisais, Gannon reacted by getting "quite aggravated" and telling her that

she "would be in a lot of trouble for serving [Longchamps]."  *Id.* at 52:10-11.[16]

     Based on the deposition testimony of Arvisais, Plaintiff has raised a question of fact

regarding Gannon's credibility and, consequently, a question of fact about the integrity of the

entire investigation.[17]  *See, e.g.*, *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 845-46

(8th Cir. 2007) (denying summary judgment where non-moving party's "evidence put the overall

credibility of the [movant's] witnesses squarely at issue.").  It is well-settled that a district court

may not make credibility determinations on a motion for summary judgment.  *Manganiello v.*

*City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) ("Credibility determinations, the weighing of

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those

of a judge.") (quoting *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)); *see also*

*VanWormer v. Gruppo Rizzi 1857, s.r.l.*, No. 5:03-CV-1121, 2007 WL 2091224, at *4 (N.D.N.Y.

July 20, 2007) ("Summary judgment becomes improper when credibility of a witness is crucial

to the case. . . .  Since there is a question regarding the credibility of a key witness, [] there is a

question of fact for the jury to decide.") (citing *Arnstein v. Porter*, 154 F.2d 464, 470-71 (2d Cir.

1946)).  "If the credibility of the movant's witness is challenged by the opposing party and

specific bases for possible impeachment are shown, summary judgment should be denied."

*Sterling Nat'l Bank & Trust Co. v. Federated Dep't Stores, Inc.*, 612 F. Supp. 144, 146

---

[16] While Gannon's deposition testimony contradicts Arvisais' claims about the telephone conversations, *see* Randazzo Decl. Ex. D ("Gannon Tr.") 183, 239:19-240:16, 244:2-17, 246:5-11, and the record is replete with evidence tending to credit Gannon, a reasonable jury could find Arvisais to be the more credible witness and the Court has made such an inference as is required on a motion for summary judgment.  *Brod*, 653 F.3d at 164.

[17] The Court notes that other law enforcement officials were involved in the investigation on the night of the Accident and the following day, Defs.' 56.1 Stmt. ¶¶ 2, 15-16, and that Captain Lindert was involved in a supervisory capacity throughout the investigation, *id.* ¶¶ 17, 54; however, Gannon was the primary law enforcement officer responsible for the investigation, and Gannon personally obtained all of the sworn witness statements and executed the three accusatory instruments for which Plaintiff was prosecuted.  *Id.* ¶¶ 17, 21-23, 31-43, 45-51, 54; Randazzo Decl. Ex. W.

(S.D.N.Y. 1985); *see also Drake v. Handman*, 30 F.R.D. 394, 396 (S.D.N.Y. 1962) ("[W]here, as in the case at bar, credibility, including that of the defendant, is crucial [], summary judgment seems particularly inappropriate.") (internal quotation marks omitted).  This is true even if the credibility of a critical *interested* witness is only partially undermined in a material way by the non-moving party's evidence.  *Chem. Bank v. Hartford Accident & Indem. Co.*, 82 F.R.D. 376, 378-79 (S.D.N.Y. 1979) (denying summary judgment where non-moving party pointed to specific facts that "sufficiently attacked the credibility of the [moving party's] affiants so as to place that fact in issue."); *see also Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) (reversing summary judgment where circumstantial evidence offered by non-moving party raised genuine issue of fact as to the credibility of moving party's witnesses who had motive to lie, because "when questions about the credibility of key witnesses loom as large as they do here, summary judgment is inappropriate").

Construing all inferences and resolving all ambiguities in the light most favorable to Plaintiff, a reasonable jury that accepted Arvisais' allegations as true could reasonably infer that Gannon used similar tactics to gather statements from other witnesses who *did* provide statements implicating Plaintiff and who testified against Plaintiff at trial.  Given the centrality of Gannon's role in gathering the evidence that was used to prosecute Plaintiff, Arvisais' testimony is sufficient to create a triable issue of fact with respect to probable cause.  Additionally, where, as here, there is a triable question as to the truth of the allegations supporting probable cause, malice is also a question for the jury.  *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well."); *see also Chimurenga v. City of New York*, 45 F.

12

Supp. 2d 337, 344 (S.D.N.Y. 1999) ("This is even more the case where, as here alleged, the defendants attempted to falsely create a sham probable cause.").

Therefore, having carefully reviewed the record, the Court concludes that this case cannot be resolved by way of summary judgment; rather, a jury will need to hear Arvisais' testimony, Gannon's testimony and the other evidence in the record to resolve the issues of fact surrounding the strongly contested version of events offered by the parties as it relates to the underlying criminal investigation and Plaintiff's prosecution.  *Boyd*, 336 F.3d at 77.

## IV. Deprivation of A Right to a Fair Trial

Defendants have also moved for summary judgment on Plaintiff's claim that his Sixth and Fourteenth Amendment rights to a fair trial were violated by Gannon's "perjured" testimony. Specifically, Plaintiff alleges that Gannon committed perjury when he testified that he saw of steam coming from a bag or container of food in Longchamps' car when he arrived at the scene of the Accident.  Pls.' Mem. 11-13, 21-22; Pls.' Sur-Reply Mem. Law Further Opp. Defs.' Mot. Summ. Judg. 2-3, Doc. 55; Sivin Decl. Ex. 15.  Notwithstanding Defendants' failure to directly address Plaintiff's claim that Gannon's testimony was false,[18] their motion for summary judgment on this claim is granted, because there is no admissible evidence in the record to support Plaintiff's assertions that Gannon offered false testimony during the trial.[19]

In an effort to substantiate his assertion that Gannon's testimony was false, Plaintiff points to evidence that does not in fact support his allegations, and an "expert affidavit" that is

---

[18] Rather than directly contesting Plaintiff's frequent assertions that Gannon offered perjured testimony at the criminal trial, Defendants contend that they are entitled to summary judgment on this claim, because:  (1) Gannon's testimony was not material; (2) Gannon is entitled to absolute immunity for testifying at a judicial proceeding; and (3) the existence of probable cause is a complete defense to a claim of malicious prosecution.  Defs.' Mem. 18-20; Defs.' Reply Mem. 9-10.  Because the Court is granting their motion based on the lack of evidence to support Plaintiff's specious claims of perjury, it has not addressed the merits of Defendants' arguments.

[19] The Court notes that Plaintiff relies on this unsupported claim of perjury in opposing Defendants' motion for summary judgment on his malicious prosecution claims as well.  Pls.' Mem. 21.

palpably deficient and indisputably inadmissible. Sivin Decl. Ex. 6. First, Plaintiff argues that

the falsity of Gannon's testimony can be inferred from the fact that there are no

contemporaneous notes or photographs corroborating Gannon's trial testimony, and from

Investigator Bambino's inability to recall the subject of his conversation with Gannon on the

night of the Accident—which conversation, contrary to Plaintiff's representations, Bambino did

recall. Sivin Decl. Ex. 14 (Bambino Tr. 41:10-43:19). However, these facts, which essentially

amount to a purported absence of evidence, are not evidence of anything.[20] Pls.' Mem. 21-23;

Pls.' 56.1 Stmt. ¶¶ 45, 48-49, at 23-24.

Second, Plaintiff's attempt to rely on the "expert affidavit" of Raj Parikh, Sivin Decl. Ex.

6 (the "Parikh Affidavit"), to discredit Gannon's testimony is clearly improper, as the Parikh

Affidavit is inadmissible on a number of grounds. *Major League Baseball Properties, Inc. v.

Salvino, Inc.*, 542 F.3d 290, 309-10 (2d Cir. 2008) (explaining that courts can only consider

admissible evidence in deciding a summary judgment motion).

While Defendants did not move to strike the affidavit, or address its deficiencies in any

respect, the Court has an independent responsibility to serve as the "gatekeeper" for expert

testimony, and to rely only on competent, admissible evidence in ruling on a motion for

summary judgment.[21] *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). The Parikh Affidavit

is neither competent nor admissible on its face. By way of brief example, the Parikh Affidavit

---

[20] At his deposition, Gannon testified that Investigator Bambino initially called his attention to the steam coming
from the food. Gannon Tr. 131:19-21. Additionally, although the lack of contemporaneous documentation
corroborating Gannon's recollection is not evidence of anything, the Court notes that Gannon testified that he did
not document the observation because it had no relevance to his accident reconstruction responsibilities, which is the
reason he was initially called to the scene of the Accident. *Id.* at 262:13-263:21.

[21] Before permitting a person to testify as an "expert" under Federal Rule of Evidence 702, a district court must
determine: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data
and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. *Nimely v.
City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (explaining that expert testimony that usurps the role of the
fact-finder by telling the jury what result to reach by definition does not aid the jury in reaching a decision).

does not adequately describe Parikh's educational background or experience, it does not contain

any explanation of the techniques or methodologies that he used to form his opinion, the

documents referenced in the affidavit are not part of the record, and Plaintiff has not submitted

any expert report.  This is plainly inadequate under Rule 702.  *See Daubert v. Merrell Dow

Pharms., Inc.*, 509 U.S. 579, 589-90 (1993) (explaining that under Rule 702 an expert's

testimony must be grounded in "the methods and procedures of science," and must present

"more than subjective belief or unsupported speculation" to be admissible); *see also Nimely*, 414

F.3d at 396 ("In addition to setting forth [] criteria for testing an expert's methodology, the

Supreme Court has also stated that reliability within the meaning of Rule 702 requires a

sufficiently rigorous analytical connection between that methodology and the expert's

conclusions"); *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007)

("Unfounded extrapolations not supported by, or sufficiently related to, scientific data or

expertise should be rejected; opinion that 'is connected to existing data only by the *ipse dixit* of

the expert' need not be admitted.  Expert opinion based on insufficient facts or data, or on

unsupported suppositions is not acceptable.") (quoting *General Elec. Co. v. Joiner,* 522 U.S.

136, 146 (1997)) (internal citations omitted).  Notably, the Parikh Affidavit does not even

contain the basic information required for initial expert disclosures under Rule 26, nor has

Plaintiff otherwise provided such information to the Court.  *See* Fed. R. Civ. P. 26(a)(2).

Finally, the case law upon which Plaintiff relies to support his assertion that his fair trial

claim can be decided based solely on Gannon's alleged perjury simply serves to demonstrate the

weakness of his case.  *See, e.g.*, *Morillo v. City of New* York, No. 95 Civ. 2176 (JSM), 1997 WL

72155, at *1 (S.D.N.Y. Feb. 20, 1997) (plaintiff brought malicious prosecution claim against

defendant who confessed to, *inter alia*, obtaining physical evidence through an illegal search and

seizure and falsely testifying before two grand juries and at trial in order to secure plaintiff's conviction, and who pled guilty to perjury prior to plaintiff's civil suit); *see also White v. Frank*, 855 F.2d 956, 957-58 (2d Cir. 1988) (plaintiff brought malicious prosecution claim against defendants who testified before the grand jury and at trial but subsequently confessed that such testimony had been perjured, which resulted in plaintiff's conviction being vacated).

Therefore, because Plaintiff has offered no admissible evidence to substantiate the claim that Gannon's trial testimony was perjurious, Defendants' motion for summary judgment on the claim for deprivation of a right to a fair trial is GRANTED.

## V. Section 1983 Conspiracy Claim

Although not plead as a separate cause of action in the Complaint, Defendants also seek summary judgment on Plaintiff's claim of a conspiracy between Gannon and the non-state actors to violate Plaintiff's constitutional rights.  Defs.' Mem. 20-21.  As Defendants correctly note, the Complaint is replete with allegations that all of the defendants named in the Complaint engaged in a conspiracy to have Plaintiff wrongfully charged, prosecuted and convicted of the ABC Law violations discussed above.  *See, e.g.*, Compl. ¶¶ 36-47, 52-60.  In answering Defendants' motion, Plaintiff failed to respond to (or even acknowledge) Plaintiff's arguments regarding the allegations of a conspiracy, despite obtaining leave of court to file a sur-reply in addition to his opposition papers.  Accordingly, to the extent Plaintiff intended to assert a § 1983 conspiracy claim among Gannon and the non-County Defendants, such a claim is deemed abandoned and Defendants' motion for summary judgment on this claim is GRANTED.  *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases where courts

dismissed claims as abandoned because plaintiff failed to address them in opposing defendant's dispositive motion), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012).

## VI. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Fourteenth Amendment and conspiracy claims, and DENIED as to Plaintiff's state and federal malicious prosecution claims and Barramen's derivative claim based on Plaintiff's malicious prosecution claims. The Clerk of the Court is respectfully directed to terminate this motion. Doc. 43.

Additionally, **Plaintiff is directed to show cause in writing by October 5, 2012**, why his claims against Bookless should not be dismissed without prejudice for failure to prosecute. Plaintiff's submission to this Court should include accurate and up-to-date information about Bookless' bankruptcy proceeding.

The parties are directed to appear for a conference on **October 30, 2012 at 11:30 am.**

It is SO ORDERED.

Dated:    September 27, 2012
          White Plains, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.